1  Robert Tauler (SBN 241964)
   Tauler Smith LLP
2  8605 Santa Monica Blvd #86963
3  Los Angeles, CA 90069-4109
   (310) 590-3927
4  rtauler@taulersmith.com

5  Attorneys for Plaintiff
6  NUTRITION DISTRIBUTION LLC

7

8           UNITED STATES DISTRICT COURT

9           SOUTHERN DISTRICT OF CALIFORNIA

10

11 | NUTRITION DISTRIBUTION LLC,   | CASE NO. '16CV2647 GPC MDD
12 | an Arizona Limited Liability
   | Company,
13 |                                | **COMPLAINT FOR FALSE
   |         Plaintiff,             | ADVERTISING IN VIOLATION OF
14 |                                | THE LANHAM ACT § 42 (a)(1)(B))**
15 | vs.
16 | LINE ONE NUTRITION, INC., a    | **[DEMAND FOR A JURY TRIAL]**
   | Texas corporation, ANDREW DEAN
17 | McMICHAEL, an individual, and
   | DOES 1 through 10, inclusive,
18
19 |         Defendants.

20

21

22

23

24

25

26

27

28

COMPLAINT

Plaintiff Nutrition Distribution, LLC, dba Athletic Xtreme ("Plaintiff"), by and through its undersigned attorneys, submits this Complaint against defendants Line One Nutrition, Inc., a Texas corporation ("Line One"), and Andrew Dean McMichael, an individual (collectively, "Defendant"), and in support thereof, avers as follows:

## INTRODUCTION

1. This is a civil action arising out of Line One's false and misleading advertising with respect to several products on its website, https://lineonenutrition.com, and various other on-line retail marketplaces (collectively, the "Websites"). For example and without limitation, Line One is unlawfully advertising, marketing, distributing and offering for sale products containing Selective Androgen Receptor Modulators ("SARMs") such as Cardarine (also known as GW-501516), Ibutamoren (also known as MK-677) and Ligandrol (also known as LGD-4033) (collectively, the "SARMs Products"). SARMs, like the SARMs Products, are synthetic drugs intended to have effects similar to those of illegal anabolic steroids.

2. On the Websites and through other promotional materials, Line One touts the numerous purported health and physical benefits of its various SARMs Products. For example and without limitation, Defendant represents to consumers that its Cardarine product, "Muscle Pills," is "formulated to quickly build lean muscle and bring about serious strength gains" and that it provides "a strong and effective alternative to illegal steroids and methylated ProHormones with much less risk of undesirable side effects such as acne, hair loss, etc." Additionally, Defendant claims that its Ligandrol product, "Mass Pills," can "elevate testosterone, increase strength and pack on thick and massive muscle." Notably, Defendant specifically markets its various SARMs Products as "dietary supplements" to body builders, gym users, fitness enthusiasts and athletes, promising these consumers numerous purported benefits without any of the negative side effects of anabolic steroids.

**COMPLAINT**

3. However, SARMs Products are not safe for human consumption. Indeed, medical experts have opined that products containing SARMs "have *many recognized potential serious side effects*, including hepatoxicity (liver damage), and markedly lower plasma HDL cholesterol (raising the risk of heart disease)," and may have even more serious consequences that are currently unknown. In fact, clinical trials regarding Cardarine were abandoned by GlaxoSmithKline in 2007 because animal testing showed that the drug *caused cancer to develop rapidly in several organs*. Generally, medical experts have concluded that the sale of products containing SARMs, such as the Defendant's SARMs Products, are "*highly dangerous to public safety*." (Emphasis added throughout this paragraph.)

4. Moreover, Defendant fails to disclose that SARMs are specifically prohibited for use in sporting events by the World Anti-Doping Agency and the U.S. Anti-Doping Agency, despite the fact that Defendant specifically markets its SARMs Products to body builders and other competitive athletes.

5. Accordingly, it is clear that Defendant's SARMs Products are not recognized as safe and effective for any of the uses suggested by Defendant and may pose significant health and safety risks to consumers.

6. Defendant has knowingly and materially participated in a false and misleading advertising campaign to promote and sell its products containing SARMs. Defendant's continuing false, misleading, illegal and deceptive practices have violated the Lanham Act and have unjustly enriched Defendant at the expense of Plaintiff, and have caused Plaintiff extensive and irreparable harm, including but not limited to, loss of revenue, disparagement and loss of goodwill.

7. Among other things, this action seeks to enjoin Defendant from the marketing and sale of any and all products containing Cardarine, Ibutamoren and Ligandrol and/or any other SARMs, as Defendant is illegally and falsely marketing such products in violation of the Lanham Act.

**COMPLAINT**

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. 1332 (diversity jurisdiction) because Plaintiff asserts causes of action arising under federal law and the parties are citizens of different states and the controversy exceeds the value of $75,000.

9. This Court has personal jurisdiction over Line One because Defendant has, directly or through its intermediaries (including distributors, retailers, and others), developed, licensed, manufactured, shipped, distributed, offered for sale, sold and advertised its nutritional supplement products in the United States, the State of California and this district, including but not limited to, the SARMs Products and/or other products containing SARMs. Defendant has purposefully and voluntarily placed these products into the stream of commerce with the expectation that they will be purchased in this district.

10. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions which gave rise to the claim occurred in this district. *Allstar Marketing Group, LLC v. Your Store Online*, LLC, 666 F. Supp. 2d 1109, 1128 (C.D. Cal. 2009). Alternatively, venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(3).

## PARTIES

11. Plaintiff Nutrition Distribution, LLC, dba Athletic Xtreme ("Plaintiff") is an Arizona limited liability company with its principal place of business at 14215 N. 8th Pl., Phoenix, Arizona, 85022.

12. Defendant Line One Nutrition, Inc., a Texas corporation, which lists 2607 N River Hills Road, Apartment A, Austin, Texas 78733 as its principal business address.

13. Defendant Andrew Dean McMichael is, on information and belief, the president, director, owner and operator of Line One.

**COMPLAINT**

14. Plaintiff is ignorant of the true names and capacities of defendants sued herein as Does 1-10, inclusive, and therefore sued these defendants by such fictitious names. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained. Plaintiff is informed and believes and thereon alleges that each of these fictitiously named defendants is responsible in some manner for the occurrences herein alleged, and that Plaintiff's injuries as herein alleged were proximately caused by the aforementioned defendants.

## FACTUAL ALLEGATIONS

15. The nutritional supplement industry is one of the fastest growing and most lucrative in the United States. A recent Forbes article estimates that nutritional supplement sales accounted for $32 billion in revenue in 2012 and predicts this number to grow to $60 billion within ten years. The growth and size of the nutritional supplement market and the relatively low barriers to entry provide perverse incentives for unfair competition prohibited by the Lanham Act and other illegal activity.

### Plaintiff Nutrition Distribution & "Advanced PCT"

16. Plaintiff is a cutting edge sports supplement manufacturer and marketer. From its inception, Plaintiff was a leader in the nutritional supplement market, specifically for bodybuilding.

17. Plaintiff has products in several categories of body building products, including pre-workouts, muscle-gainers, fat burners and male performance enhancement.

18. Around 2008, Plaintiff began developing a new product in the muscle-gainer sub-market of the nutritional supplement world.

19. After devoting its resources for over a year on product development and testing, Plaintiff introduced "Advanced PCT" in July 2009.

### Defendant Line One And Its SARMs Products

20. Defendant is a competing nutritional supplement company based, on information and belief, in Texas.

**COMPLAINT**

21. On the Websites and through other promotional materials, Line One touts the numerous purported health and physical benefits of its various SARMs Products. For example and without limitation, Defendant represents to consumers that its Cardarine product, "Muscle Pills," is "formulated to quickly build lean muscle and bring about serious strength gains" and that it provides "a strong and effective alternative to illegal steroids and methylated ProHormones with much less risk of undesirable side effects such as acne, hair loss, etc." Additionally, Defendant claims that its Ligandrol product, "Mass Pills," can "elevate testosterone, increase strength and pack on thick and massive muscle." Notably, Defendant specifically markets its various SARMs Products as "dietary supplements" to body builders, gym users, fitness enthusiasts and athletes, promising these consumers numerous purported benefits without any of the negative side effects of anabolic steroids.

22. However, SARMs Products are not safe for human consumption. Indeed, medical experts have opined that products containing SARMs "have *many recognized potential serious side effects*, including hepatoxicity (liver damage), and markedly lower plasma HDL cholesterol (raising the risk of heart disease)," and may have even more serious consequences that are currently unknown. In fact, clinical trials regarding Cardarine were abandoned by GlaxoSmithKline in 2007 because animal testing showed that the drug *caused cancer to develop rapidly in several organs*. Generally, medical experts have concluded that the sale of products containing SARMs, such as the Defendant's SARMs Products, are "*highly dangerous to public safety*." (Emphasis added throughout this paragraph.)

23. Accordingly, it is clear that Defendant's SARMs Products are not recognized as safe and effective for any of the uses suggested by Defendant and likely pose significant health and safety risks to consumers.

24. Defendant has falsely marketed and advertised its SARMs Products by touting the ability of such products to give consumers the massive physical gains often

**COMPLAINT**

associated with illegal steroids all while avoiding the dangerous side effects of such drugs. Such claims give consumers a false sense of security regarding the safety of the SARMs Products. In reality, Line One and its executives knew all along that their products (i) are not recognized among experts as safe and effective for use under the conditions suggested by Defendant and (ii) pose significant health and safety risks to consumers.

25. Defendant's false advertising is harmful to the marketplace for dietary and nutritional supplements, as well as to the health of individual consumers. Defendant has created an illegitimate marketplace of young bodybuilders who will gain muscle at all costs, but who are not informed of the dangers of Defendant's SARMs Products. Users of such products have little incentive to use a natural product like Advanced PCT until they are hurt or the SARMs Products are taken off the shelves.

## CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

**(False Advertising in Violation of Section 43(a)(1)(B) of the Lanham Act)**

26. Plaintiff incorporates the allegations contained in the foregoing paragraphs as though fully set forth herein in their entirety.

27. Defendant has purposely made false and misleading descriptions of fact concerning the nature, characteristics and qualities of the SARMs Products and other products containing SARMs, including marketing and mislabeling such products without mentioning their potential for serious side effects.

28. In fact, it is not at all clear that the SARMs Products are the least bit safe for human consumption. Indeed, medical experts have opined that products containing SARMs "have *many recognized potential serious side effects*, including hepatoxicity (liver damage), and markedly lower plasma HDL cholesterol (raising the risk of heart disease)," and may have even more serious consequences that are currently unknown. In fact, clinical trials regarding Cardarine were abandoned by GlaxoSmithKline in 2007

because animal testing showed that the drug *caused cancer to develop rapidly in several organs*.  Generally, medical experts have concluded that the sale of products containing SARMs, such as the Defendant's SARMs Products, are "*highly dangerous to public safety*." (Emphasis added throughout this paragraph.)

29.  The use of such falsely marketed substances has the tendency to deceive a substantial segment of the public and consumers, including those in this district, into believing that they are purchasing a product with different characteristics.

30.  The deception is material because it is likely to influence a consumer's purchasing decision, especially if the consumer is concerned about the consequences of taking steroids or illegal substances.

31.  Defendant has introduced its false and misleading statements into interstate commerce via marketing and advertising on various websites and shipment into interstate commerce of its products containing false and misleading advertising.

32.  Plaintiff has suffered both an ascertainable economic loss of money and reputational injury by the diversion of business from Plaintiff to Line One and the loss of goodwill in Plaintiff's products.  Indeed, Line One's conduct is a black eye on the industry as a whole and has the tendency to disparage Plaintiff's products and goodwill.

33.  Defendant's actions, as described above, constitute false and misleading descriptions and misrepresentations of fact in commerce that, in commercial advertising and promotion, misrepresent the nature, characteristics and qualities of Defendant's products in violation of Section 43(a)(1)(B) of the Lanham Act.

## PRAYER

Wherefore, Plaintiff Nutrition Distribution LLC prays for judgment against Defendant Line One Nutrition, Inc. as follows:

1. For preliminary and permanent injunctive relief enjoining Defendant from producing, licensing, marketing and selling any product containing any SARMs, including, without limitation, the SARMs Products;
2. For an award of compensatory damages to be proven at trial in accordance with 15 U.S.C. § 1117;
3. For an award of any and all of Defendant's profits arising from the foregoing acts in accordance with 15 U.S.C. § 1117 and other applicable laws;
4. For restitution of Defendant's ill-gotten gains;
5. For treble damages in accordance with 15 U.S.C. § 1117;
6. For punitive damages;
7. For costs and attorneys' fees; and
8. Any other relief the Court may deem appropriate.

DATED: October 24, 2016                    TAULER SMITH LLP


By: ___/s/ Robert Tauler_____
     Robert Tauler
     NUTRITION DISTRIBUTION LLC

**COMPLAINT**

# **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury.

DATED: October 24, 2016          TAULER SMITH LLP

By: ___/s/ *Robert Tauler* _____
Robert Tauler
NUTRITION DISTRIBUTION LLC

**COMPLAINT**